# Richmond.

## CAMP MANUFACTURING COMPANY V. CARPENTER.

March 9, 1911.

1. CONTRACTS—*Validity — Uncertainty — Railroad — Case in Judgment.*—The writing recited in the opinion of the court stipulating for the right of way for a railroad is evidence of a valid contract. It is for a lawful purpose, between competent parties, for a valuable consideration and is under seal. The provision in it that the company "can keep said road on our land as long as needed" does not render the contract incomplete or uncertain.

2. REGISTRY—*Contract Recorded Within Ten Days After Acknowledgment—Code, Sec. 2467—Notice—Case in Judgment.*—A contract duly recorded within ten days after it is acknowledged and the acknowledgment certified is, by virtue of section 2467 of the Code "as valid as to creditors and subsequent purchasers as if such admission to record had been on the day of such acknowledgment and certificate," and subsequent purchasers take with constructive notice thereof. In the case in judgment, the subsequent purchaser had not only the constructive notice provided by section 2467 of the Code, but actual notice of the prior contract.

Appeal from a decree of the Circuit Court of Brunswick county. Decree for the defendant. Complainant appeals.

*Reversed.*

The opinion states the case.    ·

*E. P. Buford* and *E. R. Turnbull, Jr.,* for the appellant.

*Marvin Smithey* and *R. B. Davis,* for the appellee.

KEITH, P., delivered the opinion of the court.

The facts of this case are as follows: The Camp Manufacturing Company is engaged in the business of buying standing timber and timber lands, and the manufac-

ture of timber into lumber; and in order to carry on its business has erected and equipped three large lumber manufacturing plants, one of which is located at Franklin, on the Southern railway, in Isle of Wight county, one at Arringdale station, on the Southern railway, in Southampton county, and the third at Butterworth, on the Seaboard Air Line railway, in Dinwiddie county. In the conduct of its business it employs a large number of employees, teams, expensive machinery and appliances, and in order to make its business profitable it is necessary that it should acquire great bodies of standing timber, and build, equip and operate railroads for the purpose of hauling and transporting its timber and raw material from remote localities to its plants to be manufactured, and to incur large pecuniary obligations in order to provide the necessary means with which to conduct its business. For the purpose of acquiring standing timber in sufficient quantities to render its business successful and justify it in incurring the vast expenses aforesaid, it has lawfully and in good faith, from time to time, purchased large tracts of standing timber, separate from the land on which said timber is growing, and in many instances purchased tracts of timbered land in fee simple, until it has acquired large holdings of timber lands and standing timber, amounting to many millions of feet of timber and many thousands of acres of lands. A large part of the lands and timber thus acquired is in the county of Brunswick, on the Meherrin river, which flows from the west to the east, passing through about the center of the county.

John W. Harrison and wife owned a tract of 891½ acres of land on the south side of the Meherrin river, and on the 18th day of May, 1899, they conveyed to the Brunswick Lumber Company, a corporation, all the timber, pine and poplar, ten inches in diameter across the stump and larger at the time of cutting, on this tract; the deed containing the

following covenant: That the parties of the first part (John W. Harrison and wife) "are seized of said timber in fee simple, that the same is free from all encumbrances whatever, that they will execute such further assurances as may be necessary to give a good and sufficient title to the said party of the second part for the said timber, and that said party of the second part shall quietly use, enjoy and occupy the same under this contract. It is agreed that the said party of the second part, its assigns or successors, shall have the right to erect such buildings on said land as they see fit, and to build, use and operate railroads, tramways, or bogy roads across the lands of the said parties of the first part for the purpose of removing said timber or anything else which they now, or may hereafter wish to carry over said railways, tramways, etc., and they may use such material from said land along said roads, tramways, etc., as may be necessary or convenient to build and maintain the same, and they shall have the right to remove the said buildings, railroads, tramways, etc., from said lands within one year after ceasing to operate, use or occupy said buildings, railroads, tramways, etc. The said party of the second part, its assigns or successors, shall have five years from the date of this deed in which to remove the timber herein conveyed from the said land, and if they fail to remove the said timber in said time, they may have such further time in which to remove the same as they may desire, provided, however, that they pay interest to the said parties of the first part, or their assigns, at the rate of six *per cent. per annum* on the amount of the purchase price above mentioned, from the expiration of the said five years until they remove the said timber. And the parties of the first part shall pay all levies, taxes, assessments and dues upon the said land or timber, until the said timber shall be removed."

Harrison and wife executed a second deed to the Bruns-

wick Lumber Company, on May 27, 1899, by which they conveyed all timber, oak, pine and poplar, ten inches in diameter across the stump and larger, at the time of cutting, on the land therein described, with covenants and reservations similar to those above set out, all of which appears from these deeds which are filed as exhibits with the bill.

On the 1st day of November, 1902, the Brunswick Lumber Company conveyed to the Camp Manufacturing Company, as its assignee, and successor, all of the timber property and rights granted to it by John W. Harrison and wife in the two deeds just mentioned, and these deeds were all duly recorded in the clerk's office of Brunswick county.

On the 1st of January, 1903, Harrison and wife conveyed the 891½ acres to George C. Dromgoole, who died leaving as his heirs at law Edward Dromgoole, a brother of the full blood, and John W. Harrison and Mary C. Epes, a brother and sister of the half blood; and by subsequent conveyances the title to the whole 891½ acres, called the "Westward Farm," vested in Mary C. Epes.

In the deed of the 1st of January, 1903, from John W. Harrison to George C. Dromgoole, there is a reservation by which all the timber on the land therein conveyed and all rights under the contracts of sale to the Brunswick Lumber Company, "whether of reversion of said timber or payments to be made by said company for any cause, and all other rights whatever," are reserved to John W. Harrison and wife.

On the 30th of April, 1906, Mary C. Epes and her husband conveyed to W. R. Carpenter and George W. Pearson this tract of 891½ acres.

It appears that a controversy arose between Mrs. Epes and W. R. Carpenter with respect to the extent and value of the timber rights and interests reserved by John W. Harrison in this 891½ acres of land, which resulted in a

suit in which Carpenter claimed an abatement of the purchase money which he had agreed to pay. This terminated in an agreement by which the purchase money agreed to be paid by Carpenter to Mrs. Epes was reduced by the sum of $———, and Carpenter and his co-purchaser, Pearson, released Mrs. Epes from any and all liability to them or either of them on account of the timber rights held by the Camp Manufacturing Company as successors to the Brunswick Lumber Company or otherwise on the said tract of land.

The Camp Manufacturing Company, in the prosecution of its business, desired to build a railroad from a point on the Southern railway to the north of the Meherrin river across said stream to its holdings of timber to the south of that river at a point opposite the tract of 891½ acres, and for this purpose it acquired rights of way from the intervening land owners, and its surveyor and agent went upon the 891½ acres of land for the purpose of surveying and locating its line of railway. Carpenter was present on that occasion and aware of their purpose. It appears that the country to the east of said tract is rugged, and that a railway cannot be constructed through it without great expense; and Carpenter, it appears, suggested to the Camp Manufacturing Company's agent a line for the railroad through the tract of 891½ acres and through a tract owned by one Austin Phillips, through whose lands a right of way could be acquired without great expense, and pointed out in detail what was, in his judgment, the proper location for the road. Upon an examination it was found that the line suggested by Carpenter was an advantageous route, and thereupon, on the same day, the 25th of September, 1908, the agent of the Camp Manufacturing Company went to Phillips and was told by him that it would also be necessary to acquire a right of way through the lands of his brother, A. D. Phillips, and thereupon the Camp Manu-

facturing Company obtained from the Phillips brothers a paper which is as follows:

"Austin Phillips and wife to Camp Manufacturing Company. Agreement.

"We have this day sold to Camp Mfg. Co. a right of way across our lands which was looked over by Mr. Rawlings for the purpose of locating a railroad, for the sum of Seventy One Dollars, one dollar of which has been paid, the balance seventy dollars to be paid when deed is prepared and signed which we agree to do when presented. It is agreed that said company can keep said road on our land as long as needed (the time to be agreed upon when contract is signed) provided they pay us the said amount of $71.00 a year.

"Witness our hands signatures and seals this 25th day of September, 1908.

his

"AUSTIN    X    PHILLIPS    (Seal)

mark

his

"A. D.    X    PHILLIPS    (Seal)"

mark

This paper was acknowledged before a notary public upon the day of its date, and was admitted to record on the 5th day of October, 1908. On the 30th of September, 1908, Austin Phillips, whose land lies immediately south of the 891½ acres, known as the Harrison tract, conveyed to W. R. Carpenter, in consideration of the sum of $12.50, a strip of land fifteen feet wide, extending entirely through and across the farm of 66 acres on which Austin Phillips now resides, the said strip thus conveyed being bounded on the north by the lands of Carpenter and Pearson, which is the Harrison tract so often mentioned, and the lands of Adeline Brown. This deed was acknowledged on the 30th

of September, 1908, and was admitted to record on October 2nd of that year.

The Camp Manufacturing Company entered upon a portion of this fifteen-foot strip of land purchased by Carpenter from Phillips, and thereupon Carpenter brought an action of ejectment to recover possession of it. The Camp Manufacturing Company filed its bill to enjoin the prosecution of this action of ejectment and of a certain action of unlawful detainer, and the injunction was granted, upon condition that it confess judgments in favor of Carpenter, the plaintiff in the actions of ejectment and unlawful detainer, which said judgments when confessed were to be held subject to the future order of the court in the chancery cause. Carpenter answered this bill, and depositions were taken, from which we deduce the facts as we have stated them.

The circuit court was of opinion that the plaintiff had "failed to show such a state of facts as to justify a court of equity in interfering by injunction to prevent the defendant, W. R. Carpenter, from the full use and enjoyment of his fee simple title to the fifteen-foot strip of land in the proceedings mentioned, or to prevent him from suing out a writ of possession for the said land upon the judgment in ejectment instituted against it by the said Carpenter, and referred to in the proceedings; or from suing out a similar writ of possession upon the judgment in his favor against the said Camp Manufacturing Company, which was confessed by the said Camp Manufacturing Company in the suit of unlawful detainer instituted against it by said Carpenter." It therefore directed a writ of possession to issue in favor of Carpenter against the Camp Manufacturing Company in the ejectment suit, and a similar writ in the case of unlawful detainer; and nothing further remaining to be done, the cause was removed from the

docket.   From that decree an appeal was taken to this court.

We think that the paper writing signed by Austin Phillips and his brother, dated the 25th of September, 1908, is evidence of a valid contract.   It was for a lawful purpose, between parties capable of contracting, for a valuable consideration and under seal; and the provision in it, that the Camp Manufacturing Company "can keep said road on our land as long as needed," does not render the contract incomplete or uncertain.   It was duly recorded within ten days from its date, and by virtue of section 2467 of the Code, "is as valid as to creditors and subsequent purchasers as if such admission to record had been on the day of such acknowledgment and certificate."   Such being the effect of the statute law, W. R. Carpenter, when he acquired his deed from Phillips of the 30th of September, 1908, took his title with constructive notice of the rights of the Camp Manufacturing Company.

Without going into a detailed discussion of the facts which have been fully stated, we are of opinion that if the contract of September 25, 1908, had not been recorded Carpenter is shown by the evidence to have had actual notice of the rights of appellant under that contract, and was by his conduct so connected with and related to the subject as to justify a court of equity in restraining him from any interference with the Camp Manufacturing Company in the construction and operation of a railway across the fifteen-foot strip of land in the bill and proceedings mentioned.

The decree of the circuit court must, therefore, be reversed, and this court will enter a decree restoring and perpetuating the injunction, so as to permit the appellant to enter upon, occupy and enjoy the use of so much of the aforesaid strip of land as may be convenient and necessary for its purposes in the construction and operation of

its railroad in accordance with the covenants in the several deeds from John W. Harrison and wife, by which it was authorized "to build, use and operate railroads, tramways or bogy roads" across the lands embraced in said deeds for the purpose of removing "said timber or anything else which they now or may hereafter wish to carry over said railroads"; and it is further ordered that the appellant recover its cost in this behalf expended from the appellee, W. R. Carpenter.

*Reversed.*