# Richmond

## H. G. SHIRLEY, VIRGINIA STATE HIGHWAY COMMISSIONER, ET ALS. v. VIRGINIA M. VAN EVERY.

January 12, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and Chinn, JJ.

The opinion states the case.

*F. S. McCandlish, Charles Pickett* and *Jos. F. Hall,* for the appellants.

*Emery N. Hosmer* and *Thomas H. Patterson,* for the appellee.

HOLT, J., delivered the opinion of the court.

The Federal government has recently completed, or is completing, a monumental memorial bridge across the Potomac river from the Lincoln Memorial to Arlington county and the Virginia shore. Adequate approaches and their location had long been a matter of absorbing local interest. Rival routes were suggested and advocated with earnestness by those likely to be affected, for good roads bring added values to adjacent lands. Once established interest lessens. We pay with reluctance for what we already have.

The Lee Highway Association, Incorporated, is a nonprofit corporation whose major purpose is to promote the building of improved highways. Boulevard Properties, Incorporated, is an ancillary corporation, chartered to promote the same purposes, and specifically to advance the construction of an approach to the memorial bridge. The road in judgment, now under construction, is to reach from that bridge across Arlington county to some distant western terminus. It passes through a tract of thirty-one acres of county land, once owned by Mr. E. B. Van Every, now dead. Representatives of the Lee Highway Association called upon him, in the interests of this boulevard, and asked that he donate a right of way. They brought to his attention the indirect but substantial benefits which would accrue, due to increased values of lands remaining in a locality so improved. Mr. Van Every was unwilling to contribute but was willing to sell his entire holdings.

It was in anticipation of situations like this that the Lee Highway Association had chartered the Boulevard Properties, Incorporated. Accordingly an option contract was

entered into between Mr. Van Every and the Boulevard Properties, Incorporated, for the sale to it of the entire thirty-one acre tract. Later, for reasons satisfactory to himself, he became dissatisfied and said that if this contract were cancelled he would donate a right of way. The option contract was surrendered, and at the same time, on December 30, 1925, he and his wife executed that on which this cause turns, which is as follows:

"This contract, made this 30th day of December, 1925, by and between E. B. Van Every—Virginia Van Every of Arlington county, Virginia of the first part, hereinafter called landowner and Lee Highway Association, Incorporated, of the second part, hereinafter called Lee Highway Association, Incorporated:

"Witnesseth: Whereas, the second party proposes the development of Lee Boulevard from the Arlington Memorial Bridge across northern Virginia, along Lee Highway and as far as practicable through the proposed Shenandoah National Park, to Newmarket, Virginia, and the development of such boulevard will greatly enhance the property of the first parties; and

"Whereas, it is desirable that the land necessary for such boulevard be secured by said second party, to be held in trust and transferred to either the Commonwealth of Virginia or portions near Washington to the National Capital Park Commission, or to such other governmental agency as may be authorized to develop said boulevard;

"Now, therefore, in consideration of the premises, the first parties hereby agree to bind themselves, their heirs and assigns to convey to the second party so much of the lands of the first parties as is necessary to provide a strip 100 feet wide on either side of the center line of said Lee Boulevard as the same has been located or may be located by Lee Highway Association, Incorporated, said strip of land being a part of a tract containing about thirty-one acres in Arlington county, Virginia, and adjoining the lands of . . . . . . on

the east and of ...... on the west, said strip being about ...... feet in length;

"And the first parties also agree and bind themselves, their heirs and assigns, to forever restrict the use of their adjoining lands so that no building shall be erected or maintained thereon for a distance of sixty feet from said boulevard.

"Said strip of land and restriction to be conveyed and provided for by proper deed to be executed by the first parties, their heirs and assigns, upon request of the second parties, with the following stipulation, that should it be necessary to remove and rebuild any buildings or other improvements now located on said strip or strips this work shall be done without expense to the landowners;

"Provided, further, that such deed shall provide that the first parties, their heirs or assigns, may retain the use of said strip of land until such time as it may be required for the development of said boulevard, such use to conform to the plans for said boulevard when same are adopted.

"Provided, further, that should Lee Highway Association, Incorporated, fail to secure by April first, 1926, enough land and sufficient cooperation from the respective communities, the Commonwealth of Virginia and the National Capital Park Commission to proceed with the plan for the boulevard, this contract shall be null and void and title will remain the same as though this option had not been granted.

"Decision as to whether a sufficient amount of land and cooperation has been secured is with Lee Highway Association, Incorporated, and its decision shall be final unless the landowner, within ten days after receiving notice of said decision, shall file an appeal, in writing, to the Chairman of the State Highway Commission of Virginia, a copy of said appeal to be filed also with the Lee Highway Association, Incorporated. If such appeal is taken the decision of the Chairman of the State Highway Commission of Virginia shall be final.

"Further stipulations to this contract are on the back of this contract and made a part of this contract.

"Witness the following signatures and seals.

"Said right of way to proceed along one of three routes of the subdivision of Mount Royal to be recorded among the land records of Arlington county, Virginia.

"First: One hundred feet on either side of the center line of Easy street and extending from the east line of the Van Every property to the west line; or,

"Second: Beginning at the north line of the proposed street and extending two hundred feet southward along proposed street from the east side of the subdivision to the west side of the subdivision and both of said right of ways to be parallel with Easy street or proposed street; or,

"Third: One hundred feet parallel with Shelley Road and running from the east side of the subdivision to the west side of the subdivision and said one hundred feet to begin from the center of the said Shelley Road.

"It being understood and agreed that by the option only one of the three rights of ways described herein is to be given in accordance with this contract; said right of way described herein being shown on a plat of the proposed subdivision attached hereto and made a part of this option.

"This option is also subject to a lease now binding against said property.

"Witness the following signatures and seals.

> "E. B. VAN EVERY,  (Seal)
> "VIRGINIA VAN EVERY,  (Seal)
> "W. S. HOGE, JR.  (Seal)
> "Chairman of Central Committee of Lee Highway Association."

This contract is called an option, but calling it an option does not make it one. It is a contract of sale, plain upon its face and recites that "in consideration of the

premises, the first parties hereby agree to bind themselves, their heirs and assigns to convey to the second party so much of the lands of the first parties as is necessary to provide a strip 100 feet wide on either side of the center line of said Lee Boulevard as the same has been located or may be located by Lee Highway Association, Incorporated, said strip of land being a part of a tract containing about thirty-one acres in Arlington county, Virginia, and adjoining the lands of ...... on the east and of ...... on the west, said strip being about ...... feet in length."

An option is a right to purchase. This is a contract to convey when certain conditions precedent have been met.

■ "An option, in the proper sense, is a contract by which the owner of property agrees with another that he shall have the right to purchase the same at a fixed price within a certain time. It is in legal effect an offer to sell, coupled with an agreement to hold the offer open for acceptance for the time specified, such agreement being supported by a valuable consideration, or, at common law, being under seal, so that it constitutes a binding and irrevocable contract to sell if the other party shall elect to purchase within the time specified." 39 Cyc. 1232. But there may be an option to sell as well as an option to buy. *Skeen* v. *Clinchfield Coal Corp.*, 137 Va. 397, 119 S. E. 89.

■ Courts prefer to construe doubtful documents as contracts rather than options, and let in parol evidence to show their nature and the intention of the parties. *Turner* v. *Hall*, 128 Va. 247, 104 S. E. 861; *Scott* v. *Albemarle Horse Show Ass'n,* 128 Va. 517, 104 S. E. 842.

Here the evidence tells us that after Mr. Van Every had given to Boulevard Properties, Incorporated, an option to purchase all of his land, he secured its surrender by executing this agreement. Mr. Hoge tells us his declared purpose:

"Mr. Van Every had made it known to us that he had determined that he would prefer to give the right of way rather than sell the property, retaining the property and getting the enhancement from the location of the boulevard."

The contract goes on to provide, "should Lee Highway Association, Incorporated, fail to secure by April first, 1926, enough land and sufficient cooperation from the respective communities, the Commonwealth of Virginia and the National Capital Park Commission to proceed with the plan for the boulevard, this contract shall be null and void and title will remain the same as though this option had not been granted.

"Decision as to whether a sufficient amount of land and cooperation has been secured is with Lee Highway Association, Incorporated, and its decision shall be final unless the landowner, within ten days after receiving notice of said decision, shall file an appeal, in writing, to the Chairman of the State Highway Commission of Virginia, a copy of said appeal to be filed also with the Lee Highway Association, Incorporated. If such appeal is taken the decision of the Chairman of the State Highway Commission of Virginia shall be final."

All of this was perfectly plain and could not possibly have been misunderstood. The Lee Highway Association thereupon proceeded actively to secure rights of way from other parties, the cooperation of the Commonwealth of Virginia, and of the National Capital Park Commission.

Dr. S. M. Johnson was general director and executive officer of the Lee Highway Association. A meeting of its executive committee was held on March 27, 1926. There was a report making certain recommendations as to location which were ratified and approved, thereupon this resolution was adopted:

"This report had been received by the association on September 6, 1925. Soon thereafter Mr. H. G. Shirley, Chairman of the State Highway Commission of Virginia, and Mr. Wade Massie, a member of the Commission were taken over the route recommended and gave their approval.

"The route recommended was therefore adopted, subject to such rectification as might be made after survey by the State Highway Commission of Virginia.

"The general director was directed to notify landowners that a stage had been reached when the association had secured a sufficient degree of cooperation to proceed with the Boulevard project and was authorized to act for the association in securing deeds from them for the 200 foot right of way as provided in the option contracts."

Acting under it, Dr. Johnson called upon the Van Everys on March 29 or on April 1. Either day would do. There is some conflict in evidence as to what then took place. Mr. and Mrs. Van Every, Dr. Johnson and, possibly, Mrs. Chambers were present. Dr. Johnson said that he took with him a deed to the strip in judgment and a letter of date March 29, 1926, addressed to Mr. Van Every, which he then delivered in person. A copy of this letter is filed in the record. It recites that, "we have secured contracts for enough land and sufficient cooperation as provided in our contract with you" to make the success of the undertaking assured. It further said that, "under this contract (that of December 30, 1925) you are among other things to deed us a strip of land 100 feet wide on either side of the center line of Easy street"—the land desired. He testified that Mr. Van Every was willing to carry out his agreement, but, due to the opposition of his family, held back and did refuse. Mrs. Van Every and her daughter, Delia, say that no deed was mentioned but that Johnson asked for renewal of the option, to which Mr. Van Every replied that he would have to see his lawyer.

Unless Dr. Johnson had prepared the deed and drafted the letter of March 29, he is guilty of a flat forgery and it is certain that he could not have forged the minutes of the meeting of the executive committee. If he did prepare them there is every reason to believe that he took them with him when he called upon the Van Everys, and he is sustained by this: Mr. W. S. Hoge, Jr., who was a member of the board of directors of the Boulevard Properties Corporation, told Mr. Van Every a few days before the deed was presented to him for execution, that it would be

presented. The resolution of March 27, authorized its execution and not the renewal of an option. Neither Johnson nor Hoge are interested save as citizens seeking to promote the welfare of the community.

That this deed was presented for execution and execution refused, is proved by the overwhelming evidence. There was then no occasion to ask for an option; a deed was needed.

It is said that the judgment of a chancellor on evidence cannot be set aside by this court. This is not always true, but when he has seen the witnesses and heard them testify, it should not be set aside except for cogent reasons. *Pryor* v. *East*, 150 Va. 231, 142 S. E. 361. But it must be a judgment on the evidence. Until he undertakes to pass thereon, it cannot be invoked.

Mr. Van Every died before the acts complained of in plaintiff's bill were undertaken. We have seen that there was a refusal to execute the deed presented. On March 12, 1931, the highway department began the construction of a road on the strip described. There was a bill of injunction; the highway authorities filed an answer and cross-bill setting up the matters heretofore stated. Plaintiff, Mrs. Van Every, who was her husband's successor in title under his will, relied heavily upon the doctrine of perpetuities violated and upon vagueness of contract. The cause came on to be heard in due course, and, of course, upon the pleadings and evidence. The trial court in its decree did not undertake to pass upon conflicting testimony, but being of opinion that there was no equity in the cross-bill, dismissed it, saying:

"Upon consideration whereof, the court being of the opinion that there is no equity in the answer and cross-bill filed by the defendants and that the injunction heretofore awarded should be perpetuated, doth adjudge, order and decree that the injunction heretofore awarded, be, and the same hereby is made perpetual, and that the defendants' cross-bill be, and the same hereby is, dismissed at the cost of the defendants, * * *."

It is next said that deeds to land along the proposed route had not been secured, and that they were required by a contract provision.

The contract did not provide that deeds should actually be delivered by adjacent landholders, but that the Lee Highway Association should "secure by April first, 1926, enough land and sufficient cooperation from the respective communities, the Commonwealth of Virginia, and the National Capital Park Commission" to warrant the grantee in proceeding with its plans for the boulevard. That they had cooperation from the necessary governmental agencies is not questioned.

As to lands secured this is the uncontradicted statement of Mr. Hoge:

"Q. Please tell the court whether or not Lee Highway Association secured enough land and sufficient cooperation prior to April 1, 1926, from the respective communities, the Commonwealth of Virginia and the National Capital Park and Planning Commission to proceed with the boulevard?

"A. They had."

Moreover, the contract of December 30, 1925, provided that any differences as to the compliance by the grantee with these stipulations, were to be settled by an appeal to the State Highway Commission of Virginia. No such appeal was taken and no reason of this character was assigned when the Van Everys refused.

We have a contract of sale under seal, supported by other considerations. There had been a surrender of the option to sell and the grantee, within the time stipulated for, had done those things which it undertook to do. No reasons which go to the equities of the case have been advanced in explanation of the refusal of the grantors to comply with their promise.

Prescribed conditions have been met.

It is said, however, that this contract is too vague to be enforced, that delay has been unreasonable, and that it violates the rule against perpetuities.

■ It gave to the vendee the right to select one of three routes across the land. None need have been named. An indefinite right of way is sufficient.

In *Camp Manufacturing Co.* v. *Carpenter,* 112 Va. 79, 70 S. E. 497, 499, this was held to be enough: "We have this day sold to Camp Manufacturing Company a right of way across our lands which was looked over by Mr. Rawlings for the purpose of locating a railroad." See, also, *Eureka Land Co.* v. *Watts,* 119 Va. 506, 89 S. E. 968; 9 R. C. L., page 792; 19 C. J., page 971; and *Grafton* v. *Moir,* 130 N. Y. 465, 29 N. E. 974, 976, 27 Am. St. Rep. 533, where the court said: "When a right of way is not bounded by the grant the law bounds it by the line of reasonable enjoyment."

No abuse of this right appears in the record. The right of "rectification" reserved in the minutes of March 27, 1926, should be construed as covering only incidental changes and not a major relocation.

■ Has the Highway Commission been guilty of laches?

Mere delay, unless it is unconscionable, is not enough. Where the way is still open to a full and fair ascertainment of all the facts this doctrine does not apply. *Whitlock* v. *Johnson,* 87 Va. 323, 12 S. E. 614.

■ "Laches is such neglect or omission to do what one should do as warrants the presumption that he has abandoned his claim, and declines to assert his right." *Wissler* v. *Craig's Adm'r,* 80 Va. 22.

"Length of time alone is not a test of staleness of a demand, and mere lapse of time, unaccompanied by some circumstances affording evidence of a presumption that the right has been abandoned is not laches." *Tidball* v. *Shenandoah Nat'l Bank,* 100 Va. 741, 42 S. E. 867, 869.

"Laches is not necessarily implied from mere lapse of time. To constitute laches there must be a delay that works a disadvantage to another." *Milligan* v. *Milligan,* 145 Va. 184, 133 S. E. 672, 673.

"Such a defense is only permitted in equity to defeat an acknowledged right on the ground that it affords evidence that the right has been abandoned. * * * Laches in legal significance is not delay, but delay that works a disadvantage to another." *National Valley Bank* v. *Fidelity Co.,* 153 Va. 484, 150 S. E. 403, 406.

There must have been some change in conditions before it can be invoked, and conditions themselves may afford internal evidence of change. Delay in land dealings in Florida during its year of speculation might be beyond all reason although in a Virginia county in normal times it would have amounted to little.

Loss of evidence is another test, as is the death of parties. See 6 Michie's Digest, page 605, citing many cases. But death alone is not sufficient and the loss of evidence must have been material. A contract vendor might die the day after his promise; of course, his death would not defeat it. Evidence lost must have been sufficient to tip the scales.

In the instant case Mrs. Van Every could not ask more than that we assume her statements would have been corroborated by her husband. If he had testified as she has done, it could not, for reasons stated, affect the conclusions we have reached.

So far as the record shows there has been no change in the general situation in Arlington county, but it is rather thickly settled and so the establishment of a boulevard like this in judgment must have necessitated construction elsewhere and a world of detail work. There has undoubtedly been considerable delay, but in view of circumstances we are not prepared to hold it unreasonable.

Has the rule against perpetuities been violated? That rule has no application where the estate must vest if at all within the time prescribed by it. Here was a contract of purchase made on December 30, 1925, supported by ample consideration. It is true that certain things were to be done on or before April 1, 1926. We have seen that they were done. The vendee from the date of its purchase

became the equitable owner of the land with the possibility of forfeiture for failure to perform stipulated conditions. The situation is not unlike that which would obtain if one bought a farm, paid in cash part of the purchase price and promised to pay the balance at a designated date, coupled with the stipulation that the amount paid should be treated as liquidated damages and that all rights should be forfeited if deferred payment was not made as promised.

"It is a great mistake, opposed to the fundamental notions of equity, to suppose that the equity maxim does not operate, and the vendee does not become equitable owner until and as far as he has actually paid the stipulated price." Pom. Eq. Jur. sec. 368; *Hurt* v. *Jones*, 75 Va. 341.

Let us assume that the article of December 30, 1925, was an option. It is true that an option is a mere possibility until it is exercised and as a consequence, is invalid if any estate may be acquired under it after the period fixed by the rule. Tiffany on Real Property, section 183, page 607; Graves Notes on Real Property, section 215; Williams on Real Property (6th ed.) 319; *Skeen* v. *Clinchfield Coal Corp., supra*. But observe, there must be the possibility of the creation of some estate at some date beyond that which it prescribes. If there is no such possibility then we may forget the rule. It does not apply to an interest which was vested. Unless our option was exercised before April 1, 1926, it, by virtue of its own provisions, became null and void. There was no possibility of the acquirement of any estate under it after that date. We have seen that within that time everything was done which should have been done and so the Lee Highway Association was entitled to have executed the deed which it tendered.

One who held under seal the right to purchase within thirty days a farm for $10,000, and who, within the time prescribed, tendered the promised price, would have a title which equity would perfect. Any failure thereafter to assert his rights would involve the doctrine of laches alone.

■ Finally, it is said that the equities are with Mrs. Van Every.

There had been a surrender of a valuable option. The Lee Highway Association certainly at the expense of time and labor has done those things which it promised to do, and the Commonwealth of Virginia, by recorded assignment, has succeeded to all its rights. This undertaking will increase the value of all the lands along the road. Mr. Van Every thought so and said so. The equities are against her.

The decree complained of must be reversed, and it is so ordered.

*Reversed.*