CRANBROOK INVESTORS, LTD., Plaintiff,

v.

GREAT ATLANTIC MANAGEMENT COMPANY, INC., et al., Defendants.

Civil Action No. 4:97cv97.

United States District Court, E.D. Virginia, Newport News Division.

Sept. 30, 1998.

Michael Robert Katchmark, John Yeardley Pearson, Jr., Walter Dekalb Kelley, Jr., Willcox & Savage, Norfolk, VA, for Plaintiff.

Charles Frederick Wittoefft, Ian James Wilson, Hirschler, Fleischer, Weinberg, Cox & Allen, Richmond, VA, Everette Garrett Allen, III, Richmond, VA, for Defendants.

## MEMORANDUM OPINION AND FINAL ORDER

JACKSON, District Judge.

This matter is before the Court on Defendants' motion for summary judgment. Plaintiff instituted this action against Defendants by complaint filed on August 15, 1997 alleging a violation of section 10(b) of the Securities Exchange Act of 1934, breach of contract, common law fraud, and promissory estoppel/equitable estoppel.[1] Count I, violation of section 10(b) of the Securities Exchange Act of 1934, was dismissed with prej-

1. The Court notes that Plaintiff has also filed an action against Defendants in the Circuit Court of the City of Virginia Beach.

2. The Court notes that certain Defendants were not investors in Cranbrook Club. However, all of the entities named as Defendants are alleged to

udice on March 27, 1998 by order of the Court and agreement of the parties. Defendants filed a motion for summary judgment on April 8, 1998. The Court has reviewed Defendants' motion, its memorandum in support of such motion, Plaintiff's opposition, and Defendants' reply. On May 5, 1998, the Court held a hearing on the matter. The Court granted summary judgment as to count IV, promissory estoppel/equitable estoppel, when Plaintiff conceded that no cause of action existed under recently clarified Virginia law. The Court took counts II and III under advisement. By order filed May 19, 1998, the Court granted summary judgment on the remaining counts, and indicated that a memorandum opinion and final order would be forthcoming. Accordingly, this Memorandum Opinion and Final Order explains and supplants the Court's earlier order.

## I. FACTUAL BACKGROUND

A great deal of extraneous information has been asserted by the parties regarding the background to this action. The Court will endeavor to recount only the most basic of background information.

The parties in this action were at one time partners in a real estate investment.[2] This investment was the Cranbrook Club Apartments located in the Ft. Lauderdale, Florida area. At some point, Defendants became interested in selling the Cranbrook Club apartment complex. Defendants entered into negotiations with Plaintiff regarding the sale of the complex. Defendants also entered into negotiations regarding the possible investment by Plaintiff in another real estate investment partnership. This second partnership would own the Banyan Bay Apartments, in Miami, Florida. Defendants in fact already owned Banyan Bay Apartments, but were negotiating the possible investment by Plaintiff in the property. During the negotiations, a number of memoranda and letters were exchanged between the parties. The

have been owned and/or controlled by the same person, Defendant Edwin A. Joseph, and for purposes of simplicity the Court will not distinguish exactly which of Mr. Joseph's entities were involved with each property in question.

central question in this case concerns a letter produced during these negotiations which Plaintiff drafted,[3] addressed to Mr. Aubrey Lane, President of Defendant Great Atlantic Management Company, Inc., and dated April 22, 1996 ("Letter of April 22, 1996"). This letter was countersigned by Defendant Edwin A. Joseph ("Joseph").

Plaintiff argues that the April 22, 1996 letter was an option agreement, granting Plaintiff the right to invest in Banyan Bay Apartments under certain specified terms, in exchange for Plaintiff's consent to the sale of Cranbrook Club Apartments. Defendants assert that the April 22, 1996 letter is nothing more than a letter of intent—essentially an "agreement to agree"—and that no binding contract of any sort was created between the parties by the April 22, 1996 letter.

Plaintiff also alleges that Defendant Joseph committed fraud in signing the April 22, 1996 letter. Plaintiff asserts that at the time Mr. Joseph signed the agreement, he had no intention of actually performing the agreement.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332, diversity of citizenship. Plaintiff is a partnership formed under the laws of the State of Texas. Defendants are either citizens of Virginia, incorporated in the Commonwealth of Virginia, or are partnerships or corporations formed or incorporated in the State of Maryland, with their principal place of business in the Commonwealth of Virginia. The amount in controversy exceeds $75,000.00.

## III. STANDARD OF REVIEW

A court may grant summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). On a motion for summary judgment, the court reviews the record as a whole and in the light most favorable to the nonmoving party; "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court's role is a limited one; "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. A genuine issue for trial is one "that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. 2505. The issue of fact must be material as well as genuine. The inquiry thus focuses ultimately on "whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id.* at 252, 106 S.Ct. 2505. Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to fin for the nonmoving party, [because then] there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citing *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## IV. DISCUSSION

The central question in this case is whether the April 22, 1996 letter is an enforceable option contract. The two remaining claims in Plaintiff's case both revolve around this question. Plaintiff alleges in Count II that Defendants breached the contract contained in the April 22, 1996 letter. Clearly, if there is no contract, there is no breach. Plaintiff alleges in Count III that Mr. Joseph committed fraud by signing an agreement (the letter) which he had no intention of honoring. However, if there is no contract, Mr. Joseph could not have made any promises in signing

---

**3.** To be precise, the letter was drafted and signed by John D. Heikenfeld, President and sole shareholder of the REMAS Corporation, which is the general partner of Plaintiff. Throughout the events in question in this action, Mr. Heikenfeld acted on behalf of Plaintiff. In this action, Mr. Heikenfeld testified (through deposition and affidavit) on behalf of Plaintiff.

the April 22, 1996 letter, and therefore there can be no fraud.

Despite the preference in Virginia law[4] to construe doubtful documents as contracts, rather than options, *see Shirley v. Van Every*, 159 Va. 762, 770, 167 S.E. 345, 348 (1933), Plaintiff has expressly disclaimed any argument that this letter was an executory contract rather than an option contact. *See, e.g.,* Transcript of May 5, 1998 Hearing on Motion for Summary Judgment at 20–21; Memorandum of Law in Opposition to Defendants' Motion for Summary Judgement at 11–12 ("The instant case does not involve an executory contract."); *id.* at 27 ("The contract was an option agreement that gave Cranbrook Investors the right, but not the duty, to invest in Banyan Bay Apartments."); Plaintiff's Statement of Genuine Issues of Material Fact in Opposition to Defendants' Motion for Summary Judgement at para. 27. Therefore, as both parties have disclaimed any intention to create an executory contract, the Court finds that no executory contract was in fact created by the April 22, 1996 letter. The only remaining issue is whether the evidence presented supports the existence of a binding option contract, or whether it mandates, as a matter of law, a finding that the letter is merely an agreement to agree.

## A. Option Contracts

■ "An option ... is a contract by which the owner of property agrees with another that he shall have the right to purchase the same at a fixed price within a certain time. It is in legal effect an offer to sell, coupled with an agreement to hold the offer open for acceptance for the time specified, such agreement being supported by a valuable consideration ... so that it constitutes a binding and irrevocable contract to sell if the other party shall elect to purchase within the time specified."

*Shirley,* 159 Va. at 770, 167 S.E. 345 (citation omitted). "The distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option.... Where, however, there is not merely the right but the obligation to buy, the contract is not one of option, but is a binding contract of sale." *Suburban Imp. Co. v. Scott Lumber Co.,* 59 F.2d 711, 715 (4th Cir.1932) (citations omitted).

■ The language of the letter in question, as well as the deposition testimony of Plaintiff's agent, Mr. John D. Heikenfeld ("Heikenfeld"), simply cannot be reconciled with Plaintiff's position that the letter constitutes a binding option. The letter states: "We [Plaintiff] approve the sale of Cranbrook Apartments under the following conditions: ... That we, [Plaintiff] ... become a Class A Limited Partner ... in Banyan Bay." Letter from John D. Heikenfeld to Aubrey Lane of April 22, 1996, at 1 [hereinafter Letter of April 22, 1996]. This language is unambiguous. In exchange for the granting of consent, Plaintiff was to become a partner in the proposed venture under the terms Plaintiff outlined. The letter simply does not state that Plaintiff will have the ability to, the choice to, or the option to, become a partner. If anything, this is the language of an executory contract, not an option.[5] This interpretation is supported by the testimony of Mr. Heikenfeld, who both drafted and signed the April 22, 1996 letter on behalf of Plaintiff. In his deposition, Mr. Heikenfeld stated in reference to the letter, "[y]es, I was commit-

---

4. There is no choice of law issue in this case. In an action arising under the Court's diversity jurisdiction, the choice of law rules of the state where the Court sits must be applied. *See Equitable Trust Co. v. Bratwursthaus Management Corp.,* 514 F.2d 565, 567 (4th Cir.1975). *See generally Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Virginia law, questions of interpretation, validity, and enforceability of a contract are determined by the law where the contract was made. *See, e.g., Johnson v. MPR Associates, Inc.,* 894 F.Supp. 255, 258 n. 1 (E.D.Va.1994); *Western Branch Holding Co. v. Trans Marketing Houston,*

*Inc.,* 722 F.Supp. 1339, 1341 (E.D.Va.1989). The place of contracting is where the final act necessary for a binding contract is performed. *See id.* It is undisputed that Mr. Joseph signed the April 22, 1996 letter in Virginia. Accordingly, Virginia law applies to this case because the place of the alleged contract is Virginia.

5. This is not to suggest that the Court would find that an executory contract existed, had the parties not expressly disclaimed such a possibility. The Court is simply observing that the language is foreign to the creation of an option.

ting the partnership to that transaction." Deposition of John D. Heikenfeld, April 2, 1998, at 198 [hereinafter Heikenfeld Deposition]; *see also id.* at 220 ("Cranbrook Investors was going to go into Banyan Bay. They had committed to do it and it was our responsibility to do it."). The Court is left in a curious position. By Plaintiff's own testimony, the letter was meant to be a binding commitment upon Plaintiff, which is squarely inconsistent with an option contract. The language of the letter itself contains no indication that an option was being created, and the Court cannot read into the letter conditional language that does not appear in the text, if the letter is to be construed as a contract. *See Wilson v. Holyfield,* 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). The Court therefore finds that this letter was not intended to create an option.[6]

Furthermore, an option contract, like other contracts, must demonstrate a meeting of the minds of the parties on every material term of the agreement. *See Smith v. Farrell,* 199 Va. 121, 127–28, 98 S.E.2d 3, 7 (1957) (" 'In order that there may be an agreement, . . . [the parties'] minds must meet as to all the terms.' ") (quoting 17 C.J.S. *Contracts* § 31). *See generally Valjar, Inc. v. Maritime Terminals, Inc.,* 220 Va. 1015, 265 S.E.2d 734 (1980). The existence of a meeting of the minds is "crucial to a determination that a contract exists." *Chittum v. Potter,* 216 Va. 463, 467, 219 S.E.2d 859, 863 (1975).

The Court concludes on the record presented that Plaintiff has not made a showing that a meeting of the minds occurred. It is clear, and in fact undisputed in this matter, that the parties contemplated that at a minimum a partnership agreement would be drafted before Plaintiff was compelled to invest its money. The prior course of dealings between these parties demonstrates a pattern of negotiating very detailed agreements, as is expected in a multi-million dollar transaction. *See, e.g., Phoenix Mut. Life Ins. Co. v. Shady Grove Plaza Ltd. Partnership,* 734 F.Supp. 1181, 1187–88 (D.Md.1990), *aff'd,* 937 F.2d 603 (4th Cir.1991) (unpublished). It is undisputed that the prior agreements between these parties contain a large number of specific items negotiated by the parties for which no corresponding agreement appears in the April 22, 1996 letter. For example, terms relating to the general partner's authority, the general partner's compensation, dissolution, winding-up, and the assignability of the partnership interests were not established. *See* Memorandum in Support of Defendants' Motion for Summary Judgment at 17. In fact, Plaintiff acknowledged that there was no discussion between the parties on many of the terms normally included in a partnership agreement:

Q: And there were no agreements reached at the time that you offered this letter of April 22, 1996 as to what that limited partnership agreement would say, was there?

A: Well, I mean, the essence of the structure was on the front page, and the fact that we had done a couple other investments with Great Atlantic wasn't talked about specifically, but it was merely a matter of probably taking Cranbrook Associates and marking it up for these terms and conditions. . . .

Q: But none of the terms of a proposed Banyan Bay Limited Partnership agreement were discussed or agreed upon, were they?

A: Other than the front page, which was the essence of the structure.

Heikenfeld Deposition at 195–96. Nonetheless, Plaintiff asserts that the terms of the agreement that were not mentioned in the April 22, 1996 letter would be provided by the Cranbrook Partnership Agreement. *See id.;* Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at 22. However, the parties never explicitly agreed that the terms of the new partnership agreement would be exactly the same as the terms of the existing Cranbrook Associates Partnership Agreement. In determining whether there was a meeting of the minds,

---

**6.** The Court also notes that option contracts typically contain a limitation upon the time for exercising the option. The letter in question contains no expiration date, or any mention of a time for exercising the option. *See, e.g., Pomponio v. Fauquier County Bd. of Supervisors,* 21 F.3d 1319, 1324 n. 15 (4th Cir.1994).

the Court looks to the statements and outward expressions of the parties. *See Wells v. Weston,* 229 Va. 72, 78, 326 S.E.2d 672, 676 (1985). Thus, Plaintiff's secret intention to complete the new partnership agreement with the terms of the existing partnership agreement is insufficient to establish a contract.

The Court concludes that the parties did not come to a meeting of the minds on all material terms of the proposed agreement.[7] Therefore, for this reason, along with the reasons detailed *supra,* the Court finds that a binding contact was not created. *See, e.g., Phoenix Mutual,* 734 F.Supp. at 1186–89. As Plaintiff has expressly disclaimed the possibility that the letter creates an executory contract, the Court must find that it creates no contact at all. Nevertheless, as the Court does not find this issue to be the sole hurdle to construing the April 22, 1996 letter as a binding option contract, the Court will address other concerns.

## B. The Letter Contemplated Further Writing

The letter of April 22, 1996 expressly contemplates that further writings will be required to complete the transaction. Specifically, the letter closed with the following language: "[i]f Mr. Joseph can confirm this condition in writing and provide the documents that complete this transaction such as the Limited Partnership Agreement on Banyan Bay, then we are prepared to go forward." Letter of April 22, 1996, at 2.

One hundred years ago, the Supreme Court of Appeals of Virginia set out the rule in this situation:

> The whole question is one of intention. If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; but the parties must be fully agreed, and must intend the agreement to be binding. If, though fully agreed on the terms of their contract, they do not intend

to be bound until a formal contract is prepared, there is no contract, and the circumstance that the parties do intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.

*Boisseau v. Fuller,* 96 Va. 45, 46–47, 30 S.E. 457, 457 (1898) (citation omitted). Clarifying this rule twenty five years later, the court stated "when it is shown that the parties intend to reduce a contract to writing this circumstance creates a presumption that no final contract has been entered into, which requires strong evidence to overcome." *Atlantic Coast Realty Co. v. Robertson's Ex'r,* 135 Va. 247, 253–54, 116 S.E. 476, 478 (1923). Plaintiff has offered a number of cases, none of which modify the basic rule set out in *Boisseau* that if the parties intend to be bound and are fully agreed, then the preparation of a formal written instrument is merely a formality, and the stated intention to prepare such a formality will not prevent a reviewing court from finding an enforceable contract. *See, e.g., Snyder–Falkinham v. Stockburger,* 249 Va. 376, 385, 457 S.E.2d 36, 41 (1995); *Agostini v. Consolvo,* 154 Va. 203, 212, 153 S.E. 676, 679 (1930); *Manss–Owens Co. v. H.S. Owens & Son,* 129 Va. 183, 195, 105 S.E. 543, 547 (1921).

Crucial to this analysis, however, is that the parties must intend to be bound even in the absence of the further writing. In other words, at the time the agreement sought to be enforced was reached, the parties must have intended to be bound, regardless of whether the further writing was ever completed. *See Boisseau,* 96 Va. at 46–47, 30 S.E. 457. Moreover, the parties must be "fully agreed." *Id.* at 46, 30 S.E. 457. That is, they must not contemplate further negotiations on material matters, or have considered other matters material to the transaction and fail to include those matters in the purported agreement. *Cf. Agostini,* 154 Va.

---

7. An option contract must also be definite and certain in its provisions. *See* 14A M.J. *Options* § 6 (1989); *Progressive Constr. Co. v. Thumm,* 209 Va. 24, 30–31, 161 S.E.2d 687, 691 (1968). The element of certainty requires that each term be "expressed in a sufficiently exact and definite

manner." 4B M.J. *Contracts* § 27 (1986). Because the Court determined that there was no meeting of the minds, it need not address whether the terms included in April 22, 1996 letter were sufficiently definite and certain.

at 211, 153 S.E. 676 (defendants offered several "material" terms not discussed in letters, but failed to show that these terms had been considered at the time of the formation of the contract).

In this case, both the language of the letter itself and Plaintiff's testimony indicate that Plaintiff had no intention of being bound solely by the terms of the letter.[8] Once again, the letter states *"[i]f Mr. Joseph can confirm this condition in writing and provide the documents that complete this transaction* such as the Limited Partnership Agreement on Banyan Bay, *then we are prepared to go forward."* Letter of April 22, 1996, at 2 (emphasis added). This language is not ambiguous.[9] The April 22, 1996 letter plainly states that Plaintiff did not intend to be bound by the agreement until the formal writings were created. Moreover, the phrase "the documents that complete this transaction" suggests that the underlying agreement, if this is to be interpreted as an option, had not been fully negotiated. The testimony of Mr. Heikenfeld confirms that Plaintiff did not intend to be bound without further writing(s), and expected further discussions to occur:

Q: It is correct, is it not, Mr. Heikenfeld, on behalf of Cranbrook Investors you were not prepared to make this investment in Banyan Bay without a limited partnership agreement?

A: Among other things, yes.

Q: By among other things you mean other documents typical for an investment of this magnitude in a real estate deal?

A: Correct.

Heikenfeld Deposition at 194–95; *see also id.* at 271–273 (discussing the need for time to review any proposed partnership agreement with counsel); Memorandum from Heikenfeld to Joseph of August 20, 1996 ("Please have your attorneys send us a Partnership Agreement for us to review.").

Not only were further negotiations contemplated in this transaction, but the documentary evidence presented in this case demonstrates that negotiations did in fact continue, even as to the terms contained in the April 22, 1996 letter. On June 11, 1996, Aubrey Lane [10] wrote to Plaintiff, proposing a new cash investment figure. On August 20, 1996, Plaintiff replied, stating that the proposal to increase the capital was acceptable. This course of further negotiations is additional evidence that the parties did not intend to be bound by the terms of the April 22, 1996 letter.

Plaintiff has not overcome the presumption of *Atlantic Coast Realty Co.* Plaintiff's testimony clearly indicates that Plaintiff did not intend to be bound without a further writing. Moreover, it strongly suggests that further negotiations were expected, and that the parties foresaw the negotiation of terms beyond those expressed in the rather brief letter of April 22, 1996.[11] Finally, the parties' negotiation of a new cash investment figure is evidence that they did not consider the terms of the April 22, 1996 letter to be binding.

## C. Fraud

Because the Court finds that no binding contract, or promise, was created by the

---

**8.** The fact that Plaintiff has chosen to characterize the letter as an option contract does not change the requirement that for the agreement to be enforceable, the underlying agreement must be fully agreed upon, and not left open to negotiation. To put it another way, every option contract actually contemplates two different contracts. The first is the agreement to keep an offer open for a certain amount of time. The second is the underlying offer, the agreement whose terms are set and agreed upon, which the holder of the option will enter into should he choose to exercise the option. *See Humble Oil & Refining Co. v. Cox,* 207 Va. 197, 201, 148 S.E.2d 756, 760 (1966). If the terms of the underlying contract are not set and agreed upon, and instead are left open for further negotiation, in essence all the option holder possesses is an

option to enter into further discussion, or an agreement to agree.

**9.** Although any ambiguity must be construed against the drafter, the Plaintiff. *See, e.g., Phoenix Mut. Life Ins. Co. v. Shady Grove Plaza Ltd. Partnership,* 734 F.Supp. 1181, 1188 (D.Md. 1990), *aff'd,* 937 F.2d 603 (4th Cir.1991) (unpublished).

**10.** The Court notes that Aubrey Lane was the recipient of the April 22, 1996 letter, and was therefore familiar with its contents.

**11.** This is supported by the past course of dealings between the parties, which involved very extensive, lengthy negotiated agreements.

April 22, 1996 letter, it follows that Mr. Joseph did not commit fraud because he never made a binding promise which could serve as a basis for a fraud claim. Therefore, Plaintiff's fraud allegations cannot stand.

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' summary judgment motion on the two remaining counts, Counts II and III, breach of contract and common law fraud.

The Clerk of Court is **DIRECTED** to send a copy of this Order to counsel of record for Plaintiff, and to counsel of record for Defendants.

It is so **ORDERED.**