# Richmond.

## EDWARD D. AGOSTINI AND OTHERS v. A. B. CONSOLVO AND A. D. OVERMYER.

June 12, 1930.

Absent, Campbell and Holt, JJ.

The opinion states the case.

*Barron & Darden,* for the plaintiff in error.

*S. M. Brandt* and *Moses Ehrenworth,* for the defendants in error.

Gregory, J., delivered the opinion of the court.

The defendants, Agostini Brothers, obtained a contract from the United States Government to erect a post office in Yonkers, New York. Their bid for this work was made in February, 1927, and accepted by the government by letter on March 31, 1927, and a

formal contract entered into as of that date. The work was to commence when the government notified Agostini Brothers and this notice was given on May 7, 1927. Agostini Brothers contemplated letting some of the work to sub-contractors. The plaintiffs, Consolvo and Overmyer, were engaged in stone masonry work and they submitted a bid to Agostini Brothers for performing the stone work in the following letter, identified as Exhibit A:

"March 15, 1927.

"AGOSTINI BROTHERS,
    "Arcade Building,
        "Norfolk, Virginia.

"DEAR SIR:

"We will furnish cut ready to set all Indiana limestone required in the erection of the U. S. Post Office Building, Yonkers, N. Y. as per plans and specifications prepared and submitted by the supervising architect, Washington, D. C., for the sum of fifty-seven thousand dollars ($57,000.00) F. O. B. shipping point, freight allowed to Yonkers, N. Y.

"We will also do all hauling, setting, cleaning and pointing of same for the sum of twenty-five thousand dollars ($25,000.00).

"Yours very truly, ·
                "CONSOLVO AND OVERMYER."

Upon receipt of this letter Agostini Brothers replied as follows by letter, identified as Exhibit B.:

"CONSOLVO AND OVERMYER,
    "Colley Avenue,
        "City.

"In Re—to Yonkers Post Office.

"DEAR SIRS:

"We hereby accept your estimate dated March 15,

1927, amounting to $25,000.00 to perform the following work according to the plans and specifications in connection with the above named building.

"All the necessary lime stone as per plans and specifications will be furnished by us F. O. B. cars Yonkers, N. Y. and all granite stone to be delivered at the building site, you are to do all the hauling of lime stone, and the setting, cleaning, pointing and finishing complete all the lime and granite stone work.

"As soon as the contract is awarded to us we will enter into contract with you, in a more detailed form, for the prosecution of the work.

"Yours very truly,
"AGOSTINI BROTHERS,
"By E. L. AGOSTINI (sgd.)
"EDWIN L. AGOSTINI.

"We hereunder signed agree fully to the terms and conditions as set forth hereabove, and accordingly affix our signature.

"CONSOLVO AND OVERMYER,
"By A. B. CONSOLVO."

On May 14, 1927, Agostini Brothers wrote the following letter, identified as Exhibit C:

"AGOSTINI BROTHERS,
"GENERAL BUILDING CONTRACTORS,
"YONKERS, N. Y."

May 14, 1927.

"CONSOLVO AND OVERMYER,
    "Colley Avenue,
        "Norfolk, Virginia.

"In Re—To Yonkers P. O.

"DEAR SIR:

"We have found the union here 100/00 strong and

they claim that the stone work, just the setting, cannot be sub-let unless the sub-contractor will perform all the masonry work.

"So, according to this ruling, it seems that unless you will be interested to also bid on the brick work, we will have to have this work done by the day.

"The stone work at the Branford P. O. fitted right good with few exceptions, and we have got it all set, the cutting that was necessary to be done in some cases to the stone was performed by our brickmasons, and no charge against you will be made for this.

"Kindly let us hear from you regarding the Yonkers P. O. stone work.

"Yours very truly,

"AGOSTINI BROTHERS,

"By E. L. A. (sgd.)

"EDWIN L. AGOSTINI."

In October, 1927, Consolvo and Overmyer sued Agostini Brothers by notice of motion for judgment for $10,000.00. The material part of the notice is as follows: "That on the 28th day of March, 1927, you did enter into a contract with the undersigned whereby the undersigned were to do all of the hauling of limestone and the setting, cleaning, pointing and finishing complete all the lime and granite stone work upon a certain building to be erected by you, consisting of a post office at Yonkers, New York, in consideration for which you were to pay to us the sum of twenty-five thousand dollars ($25,000.00), and although we were ready, willing and able to perform the work agreed upon to be done by us and offered to do so, and so notified you, you did, on or about the 14th day of May, 1927, breach your said contract and refused to permit us to perform the work as hereinbefore mentioned, by

reason thereof, we were damaged in the sum of ten thousand ($10,000.00) dollars.''

The defendants plead the general issue and filed their grounds of defense. They claimed that there was no such contract as that sued on; that the plaintiffs were not ready, willing and able to perform the work on their part to be done; that they did not breach the alleged contract; that the plaintiffs have sustained no damage; that if plaintiffs had performed the work, it could not have been done without loss to them under this contract; that conditions, at Yonkers, beyond their control, attending the work, would have prevented the plaintiffs from performing the contract.

The case was submitted to a jury, after the trial court had given two instructions and refused several others. The jury returned a verdict of $3,500.00. After a motion to set aside the verdict, which was over-ruled, the court entered judgment upon the verdict.

There are three questions presented by this record:

First: Was there a final and completed contract between the parties?

Second: Was there a breach of that contract?

Third: Did the plaintiffs prove the damages?

■ The trial court held that the two letters, Exhibits. A and B, constituted a valid and binding contract. between the parties and we are in accord with that holding.

It will be noted that the letter from Consolvo and Overmyer to Agostini Brothers, designated as Exhibit A, contained two separate offers: One, to furnish and set the Indiana limestone and the granite stone required, and the other, to do all the hauling, setting, cleaning and pointing the limestone and granite stone, but not to furnish any of the stone. This latter offer

is the offer accepted by Agostini Brothers in their letter designated as Exhibit B.

It is urged that the minds of the parties never met on several material terms and conditions and that those terms and conditions were to be embodied in a formal contract. It is claimed that the parties never agreed upon these conditions, namely: (a) That only union men be employed. (b) That the work be done under union rules. (c) When the work should be started and completed. (d) Liquidated damages might be required. (e) Bond with surety might be required. (f) Mode of payments. (g) Liability insurance should be taken care of. No mention is made in the letter from Agostini Brothers to Consolvo and Overmyer, of March 28th, of any of these conditions, nor is it shown that either party ever considered them at the time the agreement was made. At the foot of the letter of March 28th appears an acceptance of Consolvo and Overmyer in this language: "We hereunder signed agree fully to the terms and conditions as set forth hereabove and accordingly affix our signature."

It is apparent that Consolvo and Overmyer were only accepting the terms and conditions outlined in the letter. The obligation to be performed under this agreement was plain and not reasonably susceptible to any misunderstanding. The government awarded the contract to build the post office to Agostini Brothers, on March 31, 1927, and they failed from that day to furnish Consolvo and Overmyer with the formal contract, referred to in their letter.

Consolvo and Overmyer, upon hearing that the contract had been awarded by the government set about immediately to assemble their plant and equipment, organizing their men and making plans to prosecute the work, but they heard nothing from Agostini

Brothers until the receipt of the letter of May 14th, identified as exhibit C, when for the first time it was claimed by them that the union rules required that the brick work would have to be done along with the stone work. This Consolvo and Overmyer refused to do. Several other letters passed between the parties but they are not important, except, however, that in them Agostini Brothers were insisting on changing the original agreement by forcing Consolvo and Overmyer to do the brick work and Consolvo and Overmyer were standing on the agreement and refusing to do anything other than what the original agreement embodied.

It appears that the two letters A and B certainly embraced substantially all of the terms and conditions under which the work was to be done and that there was nothing left to be done except embody those terms and conditions in a formal contract which was to be prepared by Agostini Brothers, and, as already indicated, they never submitted the formal contract to Consolvo and Overmyer.

Where the minds of the parties have met and they are fully agreed and they intend to be bound there is a binding contract, even though a formal contract is later to be prepared and signed.

In the case of *Manss-Owens Co.* v. *Owens & Son,* 129 Va. 183, 105 S. E. 543, 547, it is said: "On this subject, Harrison, J., in *Boisseau* v. *Fuller*, 96 Va. 46, 30 S. E. 457, makes this clear and comprehensive statement of the generally accepted rule: "The whole question is one of intention. If the parties are fully agreed, there is a binding contract, notwithstanding the fact that a formal contract is to be prepared and signed; but the parties must be fully agreed and must intend the agreement to be binding. If though fully agreed on the terms of their contract, they do not

intend to be bound until a formal contract is prepared, there is no contract, and the circumstance that the parties do intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement. "Citing Clark on Contracts, page 38." See also *Hughes* v. *Burwell*, 113 Va. 598, 75 S. E. 230; *Mackey* v. *Mackey*, 29 Gratt. (70 Va.) 158; 6 R. C. L. 618, 13 C. J. page 290, and note in 29 L. R. A., page 431.

█ The stipulation in Agostini's letter to embody their agreement in a formal contract does not affect its validity and they have no right to use that stipulation to impose additional terms or obligations or to evade the performance of the agreement. Exhibits A and B constituted a clear, definite and completed agreement, with the understanding that it would later be expressed in a more formal contract. Agostini Brothers refused to execute the formal contract unless material conditions and provisions were inserted therein, not contemplated or embraced in exhibits A and B, which contained the original agreement, to which changes Consolvo and Overmyer declined to assent. Under these circumstances Agostini Brothers are still bound by the original agreement.

█ From the letters it is clear that the minds of the parties met; that an offer to do the work was made by Consolvo and Overmyer, which was accepted by Agostini Brothers, who outlined how the work was to be performed and this accepted by Consolvo and Overmyer at the bottom of the letter; thus, the terms were agreed upon. The contract was complete in every material respect.

The cases referred to by the plaintiff in error are easily distinguished. In all of those cases it was shown that the minds of the parties never met in mutual

agreement or that material matters were left open to future negotiation or that the parties never intended to be bound.

In the case of *Va. Hot Springs Co.* v. *Harrison*, 93 Va. 569, 25 S. E. 888, there was not an unqualified acceptance. It declared that before a contract could be consummated other points were to be considered.

In the case of *Newport News, etc.* v. *Newport News, etc.*, 97 Va. 19, 32 S. E. 789, the resolution there relied on clearly showed on its face that the parties had not reached a final and concluded agreement. The resolution provided for making a donation upon certain conditions which were never settled but left open to future negotiations and agreement.

In the case of *Berry* v. *Wortham*, 96 Va. 87, 30 S. E. 443, suit was brought for specific performance, which was denied because the time and terms upon which the deferred purchase money was to be paid were left to future negotiation and settlement.

In the case of *Belmont* v. *McAllister*, 116 Va. 285, 81 S. E. 81, appellee failed to establish a contract. Throughout the correspondence appellee recognized that there was no agreement by appellant to make the improvements suggested by him and no contract was ever suggested. So it was held that appellant was not bound.

██ ██ It is contended that even though a contract existed between the parties, it was not breached. The evidence offered to prove the breach is the letter of May 14th. Through this letter Agostini Brothers informed Consolvo and Overmyer that unless they would contract to do all the masonry work, including the brick work, they, Agostini Brothers, would do the work by the day. This letter plainly constituted a breach of the contract. Consolvo and Overmyer have

never been permitted to perform their agreement though they have shown that they were ready and willing to go to Yonkers, with their men and equipment, for that purpose long prior to May 14th. McCarthy, their foreman, did go to Yonkers at their request to make a survey of the situation and while there Agostini Brothers bound him personally in a contract to do the very work Consolvo and Overmyer had agreed to do for some $8,000.00 less than they had agreed to pay Consolvo and Overmyer. This is rather a significant fact touching the good faith of Agostini Brothers and is a possible explanation of why Consolvo and Overmyer were not permitted to do the work. At all events it constituted a breach of the contract by Agostini Brothers.

A clear statement of the law, which permits a recovery for profits, which would have been earned but for the breach of contract, is found in the case of *Manss-Owens Co.* v. *Owens & Son*, previously referred to. "Such damages must be not merely speculative or imaginary, they must be reasonably certain, and they must be consequent upon a breach of the contract. If they are so remote as not to be directly traceable to that breach, or are attributable to some other intervening cause, then they cannot be allowed. Such damages, however, are nearly always involved in some uncertainty and contingency, and can be determined only approximately upon reasonable conjectures and probable estimates. If they are so uncertain, contingent and imaginary as to be incapable of adequate proof, then they cannot be recovered. When, however, it is certain that substantial damage has been caused by the breach of a contract, and the uncertainty is not whether there have been damages, but only an uncertainty as to their true amount, then there can rarely

be any good reason for refusing all damages due to the breach merely because of that uncertainty. The violator of his contract should not be allowed to escape all liability simply because the precise amount of the damages for which he is responsible is uncertain. Nearly all commercial contracts are entered into in contemplation of future profits. As such profits are prospective, they must be uncertain and problematical, but the person injured is not to be deprived of all remedy. He has the right to prove the nature of his contract, the circumstances surrounding and following its breach, and the consequences naturally and directly traceable thereto; and it is for the jury, under proper instructions, to determine the compensation to be awarded for the breach. That compensation should be the value of the contract."

The foregoing principle is applicable to the case before us.

█ Agostini Brothers, acting on the advice of counsel, performed the work themselves and kept a strict account of its cost and they claim that, inasmuch as their account of the cost of the work shows that it cost considerably more than $25,000.00, the contract price with Consolvo and Overmyer, there was no profit in the contract, consequently, no damages resulted, and inasmuch as the action was for profits alone, it must fail. To maintain this contention we must believe absolutely that their account is correct and that all of the other evidence in the case on this point is of no probative value. Such contention is unreasonable and we are unable to sustain it. Other competent witnesses have testified that there was a profit in the contract and all of them fixed it at an amount in excess of the jury's verdict. Agostini Brothers themselves were willing, and did enter into a

contract with McCarthy to do the work for $8,000.00 less than the amount of Consolvo and Overmyer's contract. To hold that the account kept by Agostini Brothers, when in keeping the account they were acting on advice of counsel and contemplating law action, is correct and conclusive would be permitting them to be the sole judges of the fact as to whether or not there was a profit. This would be unreasonable and we cannot adopt such view under the facts and circumstances of this case.

Two instructions were given the jury and they are as follows:

"The court instructs the jury that if they believe from the evidence that the defendants entered into a contract with the plaintiff by which the plaintiff was to perform certain work upon a post office at Yonkers, New York, to be constructed by the defendants; and if they further believe from the evidence that the defendants refused or prevented the plaintiff from performing the work to be done by it under such contract, then they would find for the plaintiff for such damages as may be shown by a preponderance of the evidence to have been suffered by them."

"The court instructs the jury that the burden is on the plaintiffs to prove by a preponderance of the evidence any profits claimed by them to be due; they are not entitled to recover remote or speculative damages, nor damages based on conjectures or estimates as to what the necessary work would have cost at some place or places other than at Yonkers, N. Y."

It is needless to comment on the instructions other than to say that they are plainly applicable to the facts and were properly given.

The record discloses a case for the jury on the evidence and under the instructions and their verdict will not be disturbed by this court.

*Affirmed.*