931 F.2d 55
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Robert L. PLOUFFE, Plaintiff-Appellant,
v.
CONTEL CORPORATION, Defendant-Appellee.
 No. 90-3029.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 31, 1990.
Decided April 23, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Chief District Judge. (CA-89-1426-A)
 Louis Raymond Paulick, McLean, Va., for appellant.
 Gil A. Abramson, Semmes, Bowen & Semmes, Baltimore, Md. (Argued), for appellee; John O. Easton, Jordan, Coyne, Savits & Lopata, Fairfax, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before SPROUSE, Circuit Judge, BUTZNER, Senior Circuit Judge, and HIRAM H. WARD, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 This appeal is from the district court's grant of summary judgment to Contel Corporation ("Contel") against Robert Plouffe on the latter's claims of breach of contract and wrongful retaliatory discharge. The district court found the claim barred by Virginia's three-year statute of limitations governing oral contracts. Alternatively, it found that, even if the employment was pursuant to a written contract, Plouffe was unable to rebut the presumption that it was an at-will contract and he was properly terminated. We agree that Plouffe was employed under an at-will contract, and affirm.
 
 
 2
 * In the fall of 1984, Robert Plouffe was contacted by an executive recruiter who had been retained by Contel to recruit a senior level executive to head the company's "Networks and Systems Sector." This initial contact was followed by meetings with other Contel senior executives during the latter part of 1984 and into early 1985. In late January 1985, during a meeting with James Napier, then President and Chief Executive Officer of Contel, and Ralph Delio, Vice President for Human Resources, aspects of the employment relationship including performance criteria and compensation were discussed. The only document used in these oral negotiations was a paper comparing Plouffe's then present compensation with the compensation offered by Contel. After Plouffe "evidenced an intent to accept Contel's offer of employment," Contel responded by way of telegram on January 29, 1985, and on February 7, 1985 by letter listing Plouffe's compensation, perquisites and benefits. Plouffe worked at Contel from February 18, 1985, until September 18, 1985, when he was terminated from his position as Executive Vice President and became "a consulting employee" until October 31, 1986.
 
 
 3
 Plouffe filed breach of contract and retaliatory discharge claims against Contel on September 29, 1989. The district court found the action barred by Virginia's three-year statute of limitations governing oral contracts. Alternatively, it found Plouffe's action failed under Virginia law because he was unable to prove that his contract of employment was for a definite term or was terminable for cause only.
 
 II
 
 4
 Plouffe contends that the telegram of January 29 and letter of February 7 evidence a written contract, the terms of which are elaborated in the correspondence subsequent to commencement of his employment at Contel. The one-page telegram stating that a letter confirming the arrangements Contel extended to Plouffe was forthcoming and the three-page letter itself with provisions of the employment arrangement could well constitute a written contract. Chittum v. Potter, 216 Va. 463, 467, 219 S.E.2d 859, 863 (1975); North America Managers, Inc. v. Reinach, 177 Va. 116, 121, 12 S.E.2d 806, 808 (1941); Agostini v. Consolvo, 154 Va. 203, 210, 153 S.E. 676, 678 (1930); Manss-Owens Co. v. Owens & Son, 129 Va. 183, 196, 105 S.E. 543, 547 (1921). True, there is a difference between these cases and the case sub judice in that here the parties did not contemplate that the agreement would subsequently be reduced to a formal document. Indeed, Plouffe's request for a formal contract specifying a minimum duration of employment was denied by Napier. This denial and lack of plans for a subsequent formal contract, however, could add to the inference that the telegram and letter constitute the written contract.
 
 
 5
 Even if we find that these correspondences constitute a written contract, however, Plouffe must show that the contract was for a definite term of employment or terminable for cause only. Since he failed to meet this burden, we need not dwell on the written/oral contract issue. Under Virginia law, when a contract calls for the rendition of services, but the period of its intended duration cannot be determined by a fair inference from its provisions, it is an at-will contract. Stonega Coke & Coal Co. v. Louisville & Nashville R.R. Co., 106 Va. 223, 226, 55 S.E. 551, 552 (1906). Where there is no specific time fixed for the duration of the employment there is a rebuttable presumption that the hiring is terminable at-will. Miller v. Sevamp Inc., 234 Va. 462, 465, 362 S.E.2d 915, 917 (1987); Norfolk Southern Ry. Co. v. Harris, 190 Va. 966, 976, 59 S.E.2d 110, 114 (1950). Since Virginia law heavily favors at-will employment, see Bowman v. State Bank of Keysville, 229 Va. 534, 539, 331 S.E.2d 797, 800 (1985), Plouffe has a heavy burden in showing that his contract is one terminable only for cause. See Addison v. Amalgamated Clothing & Textile Workers Union of America, 236 Va. 233, 235, 372 S.E.2d 403, 405 (1988).
 
 
 6
 Here, even if we interpret the various correspondence as an express written contract of employment, it was not for a definite duration. Neither the telegram, letter, paper comparing present and offered benefits nor the series of subsequent letters specified a definite term of employment. In his affidavit, Napier states that his intention was that Plouffe should have "been employed by the Corporation for a reasonable length of time, during which he would have a chance to meet his goals." Delio, in his affidavit, says that "although the term of employment was never verbalized during these discussions and negotiations, it was intended that the employment of Mr. Plouffe would be for a long term career position." Plouffe contends that these affidavits along with the letter of February 7 support an inference that he was to have performance measured over a period of time and would not be terminated if his performance met the goals set. Moreover, according to Plouffe, stock option arrangements discussed in various letters subsequent to the commencement of his employment refer to a vesting schedule to take effect over the next four years, and stock rights remaining exercisable for ten years cumulatively indicate that Plouffe had such options as opposed to the possibility of having them at some point in the future.
 
 
 7
 We are not persuaded, however, that an inference of a "definite" term of employment can be drawn from that evidence. In Addison v. Amalgamated Clothing & Textile Workers Union of America, supra, the Virginia Supreme Court declined to credit employee Addison's claims that an Amalgamated representative's assurance to him that he could have a job "as long as he wanted one and as long as one existed" was sufficient to rebut the presumption that the employment is terminable at-will. Addison, 236 Va. at 235, 372 S.E.2d at 405. It found that assurances of job security so long as performance was satisfactory must be expressly provided for in the contract. Plouffe attempts to distinguish Addison by noting that there was no written contract in that case. He also stresses that the February 7 letter in the case sub judice specifically mentions "performance criteria." Again, we are not persuaded. The presence of a writing did not appear relevant to the Addison court's determination and the mention of performance criteria is only in regard to its being relevant to the calculation of a percentage of the short term incentive plan awards.
 
 
 8
 Nor is the fact that Contel retained Plouffe on the payroll as a "consulting employee" for several months after he was terminated of significant moment. Unlike Hoffman Specialty Co. v. Pelouze, 158 Va. 586, 593, 164 S.E. 397, 399 (1932), where the Virginia court found the employer's request for the employee's resignation indicative of something other than an at-will contract, in the case sub judice, Contel terminated Plouffe from his position as a senior level executive. His employment in a different position does not evidence the hesitancy apparent in Hoffman and similar cases.
 
 
 9
 Plouffe argues nevertheless that an intended fixed duration of employment may be evidenced by the employer's promises that an employee will not be dismissed without cause. Sullivan v. Snap-on Tools Corp., 708 F.Supp. 750, 751 (E.D.Va.1989), aff'd, 896 F.2d 547 (4th Cir.1990). Here, however, it cannot fairly be inferred from these correspondences that termination was limited to cause. See Sevamp, supra, and Addison, supra, where the Virginia court declined to imply a just cause provision where one is not explicitly provided. True, under Virginia law, the "at-will" factual issue becomes one for a jury where evidence concerning the terms of employment is in conflict. Yet, that issue can only be presented to a jury if the pleading gives rise to a fair inference of a fixed term contract. Sevamp, 234 Va. at 466, 362 S.E.2d at 917-18. Plouffe's pleadings fail that test.
 
 
 10
 In view of the above, the judgment of the district court is affirmed.
 
 AFFIRMED