UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DUNKIN' DONUTS, INCORPORATED;
VIRGINIA DONUTS, INCORPORATED,
Plaintiffs-Appellants,

v.                                                                      No. 95-2072

ARVIND S. LAVANI; MOHAN H.
SUTARIYA,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Robert E. Payne, District Judge.
(CA-94-312-3)

Argued: March 7, 1996

Decided: May 24, 1996

Before MURNAGHAN and ERVIN, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Sandy Thomas Tucker, WILLIAMS, MULLEN, CHRIS-
TIAN & DOBBINS, Richmond, Virginia, for Appellants. Thomas E.
Lacheney, DEAL, WELLS & LACHENEY, P.C., Richmond, Vir-
ginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Dunkin' Donuts argues that the district court wrongly found that Dunkin' Donuts and appellees, Arvind S. Lavani and Mohan H. Sutariya, entered into a binding settlement agreement. Although all parties acted at times as though they had settled, and at other times inconsistently with any such settlement, we find that the parties in fact entered into a binding settlement contract. Therefore, we affirm the district court's decision, which granted Lavani's motion to enforce the settlement agreement and dismissed with prejudice all remaining claims between the parties.

I.

Lavani and Sutariya [referred to in this opinion as "Lavani" for simplicity's sake] were franchisees of Dunkin' Donuts. Dunkin' believed Lavani to be in default of the franchise agreement and, after Lavani failed to cure the default, attempted to terminate the agreement. At a pre-trial conference during the ensuing litigation, the district court strongly urged the parties to settle. In pursuit of an acceptable settlement, the parties' attorneys exchanged numerous letters and telephone calls, which we will not detail here. There is no question that the lawyers were authorized to enter a binding agreement on behalf of their clients. In effect, Dunkin' agreed to purchase substantially all of the franchise's business assets for $46,000, although the parties dickered over some of the particulars. On December 1, 1994, Dunkin' and Lavani apparently agreed to a February 1, 1995, closing date.

On December 9, Dunkin's counsel offered draft documents memorializing the settlement agreement, and later that month sent amended documents reflecting negotiated changes. On January 4, 1995, Dunkin' wrote Lavani, stating that "Dunkin' agrees to all of the items

2

listed in your December 29, 1994 letter. Therefore, I have amended the [documents] again . . . ."

Sometime between January 4 and January 12, the lawyers had a telephone settlement conference with the district court, during which Lavani's counsel reported that Lavani had "buyer's remorse," and would not sign the settlement documents. Nevertheless, on January 12, the district judge dismissed the civil action with prejudice, "[u]pon representation of the parties that[it] has been settled." Shortly after this dismissal, Lavani's counsel sought to withdraw from representation and explained to Dunkin's counsel that Lavani would not sign the settlement documents. On January 27, Lavani's counsel wrote to the district court:

> I sincerely apologize for my apparent misrepresentation that this matter was settled. I believed it was. My client's view is different. I have therefore filed motions requesting a reversal of the dismissal order and releasing me as counsel of record. I believe that new counsel will be necessary to complete the transaction.

In early February, Dunkin' notified Lavani that Dunkin' considered the previously-discussed settlement agreement to have been "repudiated and rejected." On February 16, Lavani's counsel reported to Dunkin' that Lavani had signed the documents on advice from other counsel, and asked whether Dunkin' would settle on those terms. Dunkin' was unwilling to settle under the formerly agreed terms. On March 6, 1995, in a conference call with the court, Lavani's counsel asserted for the first time his clients' position that the parties had settled their dispute and that Lavani was entitled to enforcement of an agreement reached on December 1, 1994.

On April 4, 1994, the district court held a hearing on Lavani's Motion to Enforce Settlement Agreement and made his ruling from the bench. The court found that as of January 4, 1995, the parties had reached an agreement on all terms, and the court issued an order to enforce the agreement. Dunkin' sought reconsideration, and the court vacated its April 4 order, but again granted Lavani's Motion to Enforce Settlement Agreement "to the extent that it seeks a determination that an enforceable settlement agreement was reached by Janu-

3

ary 4, 1995." The court modified the settlement document to include a full accounting, and specified that the closing date was "to be a reasonable time after the entry of this Order." The court also dismissed the entire action with prejudice.

II.

The district court's finding that the parties entered a settlement agreement was a mixed question of fact and law. On review, factual findings are reversible only if clearly erroneous. Fed. R. Civ. P. 52(a). A finding of fact is "clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948), cited in Faulconer v. Commissioner, 748 F.2d 890, 895 (4th Cir. 1984). Legal conclusions are reviewed de novo. Bose Corp. v. Consumers Union of the U.S., Inc., 466 U.S. 485, 501 (1984).

General contract formation principles apply, of course, to settlement agreements. See Bangor-Punta Operations, Inc. v. Atlantic Leasing, Ltd., 207 S.E.2d 858, 860 (Va. 1974). The Supreme Court of Virginia has explained that "[r]easonable certainty as to the contractual obligations is all that is required" to find a binding settlement agreement. Allen v. Aetna Cas. & Sur. Co., 281 S.E.2d 818, 819 (Va. 1981). By January 4, the parties had mutually assented to the material contractual provisions, and Dunkin' has failed to point to any contractual term on which the parties had not agreed as of that date. The district court found that Lavani refused to sign the document because he felt that it did not accurately reflect the terms of the agreement reached between the parties. This factual finding was not clearly erroneous. Moreover, none of the correspondence between the parties' counsel expressed any intent that a binding agreement depended on formal execution of the written documents.

The events subsequent to January 4 are irrelevant to determination of the parties' intent to be bound as of January 4. We are troubled by Lacheney's January 27 letter to the district court, in which he represented that the matter had not been settled, but the letter and accompanying motion were evidently the result of the district court's premature entry of a motion to dismiss before the settlement was

4

signed, sealed, and delivered. Moreover, Lacheney wrote in that letter, "I believe that new counsel will be necessary to complete the transaction." The district court found that the January 27 letter "evince[s] a desire, or a statement, that the Defendant Lavani, and his counsel, new counsel, would go forward with the settlement transaction, not with the litigation . . . ." Again, we cannot find this conclusion to be clearly erroneous.

Dunkin' next argues that the district court should have applied the presumption under Virginia law that no contract is formed until the written document is executed. The Virginia Supreme Court explained in Boisseau v. Fuller that the parties' intentions are key to determining when a contract has been formed:

> If, though fully agreed on the terms of their contract, they do not intend to be bound until a formal contract is prepared, there is no contract, and the circumstance that the parties do intend a formal contract to be drawn up is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.

30 S.E. 457, 457 (Va. 1898). Later, that court recognized that this presumption--"that the purpose to reduce such a contract to writing and failure to do so is `strong evidence' against its finality"--is "certain and well established." Atlantic Coast Realty Co. v. Robertson's Executor, 116 S.E. 476, 478 (Va. 1923). But we find no evidence of the parties' intent to require execution of a written contract. Application of the presumption does not arise "when there is no understanding that the agreement will be reduced to writing as a prerequisite to the formation of a contract." Richardson v. Richardson, 392 S.E.2d 688, 690 (Va. App. 1990). In this instance, the parties simply agreed to memorialize their settlement with a formal document, but did not make the contract subject to that condition. See Agostini v. Consolvo, 153 S.E. 676, 678-79 (Va. 1930) ("Where the minds of the parties have met and they are fully agreed and they intend to be bound there is a binding contract, even though a formal contract is later to be prepared and signed.").

Dunkin' argues that the district court's failure to find that a February 1, 1995, closing date was a condition precedent to the settlement

5

agreement was an error of law. The Supreme Court of Virginia has explained,

> A condition precedent calls for the performance of some act, or the happening of some event after the terms of the contract have been agreed upon, before the contract shall take effect. In other words, the contract is made in form, but does not become operative as a contract until some future specified act is performed, or some subsequent event occurs.

Smith v. McGregor, 376 S.E.2d 60, 65 (Va. 1989) (citations omitted). Dunkin' contends that the December 1 correspondence makes a February 1 closing a condition precedent. Dunkin' argues that the failure of this condition precedent rendered the settlement void and unenforceable.

This argument fails because neither party ever expressed an intention that a February 1 closing date was a condition precedent or that time would be of the essence in closing. In fact, the closing date was left blank on the draft agreements. As a general rule, time is not of the essence unless the contract specifically makes it so. Dziarnowski v. Dziarnowski, 418 S.E.2d 724, 726 (Va. Ct. App. 1992). The proposed settlement agreement simply states that closing shall occur at a particular--though unspecified in the draft documents--time; it does not include any conditional language or explain that time was of the essence.

Finally, Dunkin' argues that the district court erred as a matter of law in failing to conclude that Lavani was estopped from asserting that a settlement had been reached based on his January 27 representation to the court that the case was not settled.* Virginia courts have recognized the general rule by which "[a] litigant is estopped from taking a position which is inconsistent with one previously assumed . . . in the course of litigation for the same cause of action." Leech v. Beasley, 128 S.E.2d 293, 297 (Va. 1962) (citations omitted). Judicial

---

*The fact that the January 4, 1995, contract was entered did not preclude a determination that a later agreement of the parties voided it. However, that possible determination was not raised or opposed by either party.

6

estoppel is regarded "in the nature of a positive rule of procedure based upon manifest justice and to a greater or lesser degree on considerations of orderliness, regularity and expedition in litigation." Rohanna v. Vazzana, 84 S.E.2d 440, 442 (Va. 1954). The rule is intended to "deny[ ] litigants the right to play fast and loose with courts." Id.; see also United Va. Bank v. B.F. Saul Real Estate, 641 F.2d 185, 190 (4th Cir. 1981) (explaining that judicial estoppel is "preclusion against inconsistent position, [which] is designed to protect the integrity of the courts and the judicial process") (citation omitted).

Lavani made an express, unequivocal representation to the district court that the matter was not settled, and has since argued that the parties had entered a binding settlement agreement. However, the district court must share some responsibility for Lavani's apparently inconsistent positions; as the court recognized, the dismissal had been granted "prematurely," and it became necessary to"restore[ ] the status quo," so that the court could handle disputes that might arise in the course of finalizing the agreement. Though we do not condone the rather loose representations made to the district court, we do not believe they compel reversal of the lower court's decision.

III.

We regret that both Dunkin' Donuts and Lavani have chosen to recognize a settlement agreement when it seemed to be to their advantage and disclaim it when they hoped for a better deal. Nonetheless, the evidence demonstrates and the district court found that as of January 4, 1995, the parties had agreed on all terms material to the bargain, to which they freely assented through their counsel. There is no evidence that the validity of the bargain depended on formally executed documents, nor that the parties agreed that a February 1 closing date was a condition precedent to the agreement. While we might have reached different conclusions had the case been before us initially, the Supreme Court has reminded us that we may not reverse a district court's factual findings if "the district court's account of the evidence is plausible in light of the record viewed in its entirety." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985).

7

IV.

Finding no error in the decision below, we

<u>AFFIRM</u>.

8