COURT OF APPEALS OF VIRGINIA

Present:   Judges AtLee, Chaney and Frucci
Argued by videoconference

UNPUBLISHED

FUTURE OF SCHOOL, INC.

MEMORANDUM OPINION[*] BY
v.         Record No. 0316-24-4          JUDGE STEVEN C. FRUCCI
                                         APRIL 22, 2025
STRIDE, INC.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge[1]

Rachel Buck Hodges (Ryan J. Strasser; McKayla J. Riter;
Thomas E.M. Werge; Austin J. Baxter; Troutman Pepper Hamilton
Sanders LLP; Werge Law Group, on briefs), for appellant.

Justin C. Fineberg (Virginia L. Boies; John Patrick Sherry; Isaac
Post; Lash Goldberg Fineberg LLP; JPS Law PLLC, on brief), for
appellee.


This dispute centers on the interpretation and enforceability of a signed, two-page "Letter

of Intent to Donate" ("LOI") relating to future donations from Stride Learning, Inc. ("Stride") to

Future of School ("Future").  Stride sued Future, seeking a declaratory judgment that, among

other things, the LOI was not "legally binding."  Future counterclaimed, seeking a declaratory

judgment that the LOI was binding and advanced a breach of contract action for Stride's

anticipated breach of the LOI.  Future also advanced a promissory estoppel claim based on

actions and commitments it made in reasonable reliance on the LOI.  In considering a demurrer

and competing motions for summary judgment, the circuit court dismissed the promissory

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Oblon entered the final order in favor of Stride on all counts.  Judge Dontaè L.
Bugg presided over and ruled on Stride's demurrer which is also at issue in this appeal.

estoppel claim and found that the LOI was unambiguous and not enforceable as a matter of law. Accordingly, it entered final judgment "in favor of [Stride] and against [Future] on all counts."

On appeal, Future argues that the circuit court erred by dismissing its promissory estoppel claim. Future acknowledges that Virginia does not recognize promissory estoppel as a cause of action but contends that Delaware law does and applies under the LOI's terms. Second, Future argues that the circuit court erred by concluding that the LOI was unambiguous and, therefore, not an enforceable contract. For the following reasons, we affirm the circuit court's judgment.

BACKGROUND

Stride is a "leading education company that provides online and blended educational products and services designed to promote personalized learning for students across the United States." Stride is organized under the laws of Delaware, and its primary place of business is in Virginia. Future is a non-profit education organization "focused on promoting the benefits and advantages of blended and online learning" by "advanc[ing] the availability and quality of digital and blended educational opportunities." Future is organized under the laws of Delaware and has its primary place of business in Colorado.

Originally, Future was established as a private non-operating foundation in 2015. As Stride and Future were "intimately involved," Stride assisted with Future's beginning operations, including its board, accounting, and marketing. Stride "played a significant part in [Future's] work during the early years and . . . served as [Future's] sole funder," donating nearly $7 million in charitable contributions over the years.

In 2020, Future began the transition from a private charity foundation to a 501(c)(3) public charity. Due to this change, Stride "emphasized the need for [Future] to become financially independent and obtain funding from a diversity of different sources" in order to comply with the Internal Revenue Service. Stride communicated several times with the

executive director of Future, stating concerns that Future was seemingly "unable to identify and secure alternative funding sources."

Despite this, in April 2021, Future's executive director, Amy Valentine ("Valentine"), sent Stride emails outlining Future's request for funding from Stride for the 2022 fiscal year, which also included Future's "goal and fundraising campaign" that would put it within IRS compliance. Valentine "emphasized Future's need for additional funds [from Stride] to facilitate [Future's] outside fundraising efforts, which were integral to its transition to a public charity." Stride responded by stating that it was still "very supportive" of Future and intended to "continue to be the largest funder for a number of years," but Stride still noted the need for Future to diversify its supporters. Valentine responded stating that they had the "same goals" including "[i]ncreasing outside financial support . . . immediately."

After this conversation, Valentine used an online, pre-made, two-page template to create the LOI memorializing the discussion. The LOI was signed by both parties and begins by stating that it "represents the basic terms for an agreement that shall be considered □ binding □ non-binding." Nevertheless, neither box was marked. Additionally, the LOI explicitly contemplated that "a formal agreement may be constructed" for the benefits of the parties. Such a "formal agreement" was not created. Regarding the terms of the contemplated donation, the LOI provided that Stride "wishe[d] to donate . . . $3.5 million over the next five years (2022-2027)," with $1.2 million of that sum already allocated to the 2022 fiscal year. The LOI also stated that the "[r]emaining funds would be allocated at the discretion of Stride." Finally, the LOI provided that it "shall be governed under the laws of the State of Delaware."

Stride donated $1.2 million to Future for the 2022 fiscal year but thereafter had concerns "based not only on [Future's] viability as an organization and its compliance with federal law, but also on Stride's duty to act in the best interests of its shareholders and to use Company funds

responsibly." Stride then inquired on the status of Future as a public charity and requested an update on Future's acquirement of additional outside funding. Despite the previous conversations, "[Future's] most recent publicly available filing lists Stride as its *sole* financial contributor."

In September 2022, Future sent a demand letter to Stride claiming that Stride "ha[d] a legally binding and enforceable obligation to pay [Future] an additional $2.3 million" based on the LOI. Future also threatened suit against Stride unless Stride made an "immediate distribution of the pledged funds." Nevertheless, the demand noted that "[l]etters of intent typically outline just the parties' intent to enter or continue negotiations" and admits that there is a presumption that letters of intent are not binding.

Stride responded that "it was under no obligation to donate charitable funds to [Future], and that, in any event, the [LOI] expressly permitted Stride to make its donation as intended over a five-year period." Stride noted "legitimate concerns" based on Future's "financial planning and stability," listing Future's "potential failure to comply with its duty as a public charity to diversify the organization's funding sources." Stride requested "evidence of any concrete measures [that Future] has taken towards achieving financial independence." Future did not provide the requested evidence, instead doubling down on its "demand" and insisting that Stride "identify its intent to abide by" the terms of the LOI.

Stride filed a declaratory judgment action to establish the parties' rights and responsibilities under the LOI. Stride specifically asked the circuit court to find it had "no legally binding obligation to donate the remaining $2.3 million" or "in the alternative, that Stride has discretion to donate the remaining [money] at any time(s) and in any increment(s) of Stride's choosing before the end of [the 2027 fiscal year]."

Future counterclaimed seeking a declaratory judgment that the LOI was a unilateral contract and that "Stride has a legally binding obligation to [immediately] donate the remaining $2.3 million." Second, Future asserted a breach of contract claim based on Stride's alleged anticipatory breach. Third, Future advanced a promissory estoppel claim, arguing that "[i]n reliance on Stride's Agreement, [Future] incurred expenses, including ongoing expenses like staff hirings, and undertook to provide programming given Stride's promised donation," which resulted in Future's detriment.

Stride filed a demurrer to Future's promissory estoppel claim, arguing that "it fail[ed] to state a cognizable cause of action under Virginia law" and "Virginia does not allow the application of a choice-of-law provision to a claim of promissory estoppel." The circuit court sustained Stride's demurrer to Future's promissory estoppel claim, finding that promissory estoppel "is not a recognized claim in the Commonwealth" and that it did not "even get to the choice of law analysis."

Later, Stride filed a motion for partial summary judgment on Future's breach of contract claim, arguing that the LOI was just "a letter of intent, that is unenforceable as a contract." But even if the LOI was an enforceable contract, Stride argued there was no breach because "Virginia law does not recognize a cause of action for the anticipatory repudiation of unilateral contracts where the promise to pay has not expired." Because "it is undisputed that the LOI provides for a term of five years" and there was not "a set timing schedule or set installment schedule," the disputed promise to pay by 2027 has not been broken. In response to Stride's motion, Future filed a cross-motion for partial summary judgment stating that Delaware law applies.

The circuit court granted summary judgment in favor of Stride on all counts. To begin, the circuit court found that the LOI was unambiguous as a matter of law and, therefore, extrinsic

evidence was not permissible "to help the [c]ourt understand what [it] means." Moreover, the LOI's unambiguous and plain language demonstrated that it was "unenforceable because it . . . lack[ed] . . . necessary elements to become a contract." The LOI did not command Stride "to do anything" and instead provided only that it "wishes to donate money" to Future, "which is a non-committal statement." Future appeals.

ANALYSIS

Future assigns two errors on appeal. First, it argues that the circuit court erred in sustaining Stride's demurrer to Future's counterclaim for promissory estoppel because a choice of law provision within the LOI states that Delaware is the governing law. Second, Future contends that the circuit court erred in granting Stride's motion for summary judgment on the basis that the LOI was unambiguously an unenforceable contract. We address Future's assignments of error in reverse order because our resolution of the second argument is dispositive of the first.

I. The LOI is not an enforceable contract or agreement.

Future argues that the circuit court erred in granting Stride's motion for summary judgment, ruling that the LOI was unambiguously an unenforceable contract.

"Summary judgment is appropriate in cases where no 'material fact is genuinely in dispute' and the moving party is entitled to judgment as a matter of law." *Ranger v. Hyundai Motor Am.*, 302 Va. 163, 169 (2023) (quoting Rule 3:20). "We review a trial court's decision granting summary judgment de novo." *Smith Dev., Inc. v. Conway*, 79 Va. App. 360, 372 (2024). "In doing so, we apply 'the same standard a trial court must adopt in reviewing a motion for summary judgment, accepting as true those inferences from the facts that are most favorable to the nonmoving party, unless the inferences are forced, strained, or contrary to reason.'" *Id.* (quoting *Stahl v. Stitt*, 301 Va. 1, 8 (2022)). In addition, "[t]he question of whether [a valid] contract exists is a pure question of law, to which we apply a de novo standard of review." *Spectra-4, LLP v.*

- 6 -

*Uniwest Commer. Realty, Inc.*, 290 Va. 36, 42 (2015) (second alteration in original) (quoting *Mission Residential, LLC v. Triple Net Props., LLC*, 275 Va. 157, 161, (2008)).

Section X specifies that the LOI is to be governed under Delaware law. And the Supreme Court of Virginia has stated that "[i]f a contract specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." *S'holder Representative Servs., LLC v. Airbus Ams., Inc.*, 292 Va. 682, 692 (2016) (alteration in original) (quoting *Settlement Funding, LLC v. Neumann-Lillie*, 274 Va. 76, 80 (2007)). "We note, however, that with respect to the rules of contract interpretation applicable here, Delaware law and Virginia law are entirely consonant." *Id.* As our Supreme Court found in *S'holder Representative Servs., LLC* related to contract interpretation, we find that the rules of contract formation under Delaware law and Virginia law are harmonious. Under Delaware law, "a valid contract exists when '(1) the parties intended that the contract would bind them, (2) the terms of the contract are sufficiently definite, and (3) the parties exchange legal consideration.'" *Eagle Force Holdings, LLC v. Campbell*, 235 A.3d 727, 731 (Del. 2020) (quoting *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010)). In Virginia, "there must be mutual assent . . . to terms reasonably certain . . . to have an enforceable contract[,]" *Allen v. Aetna Casualty & Surety Co.*, 222 Va. 361, 364 (1981), "as well as valuable consideration," *Dean v. Morris*, 287 Va. 531, 536 (2014) (quoting *Montagna v. Holiday Inns, Inc.*, 221 Va. 336, 346 (1980)).

Mutual assent, or "the meeting of the minds," requires that both parties agree to the same terms and intend to be bound by them. *Phillips v. Mazyck*, 273 Va. 630, 636 (2007). *See Agostini v. Consolvo*, 154 Va. 203, 212 (1930). Thus, "[w]here the minds of the parties have met and they are fully agreed and they intend to be bound there is a binding contract." *Id.* By contrast, if the parties do not "have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract." *Phillips*, 273 Va. at 636 (quoting *Persinger & Co. v.*

*Larrowe*, 252 Va. 404, 408 (1996)). "Ultimate resolution of the question whether there has been a binding settlement involves a determination of the parties' intention, as objectively manifested." *Snyder-Falkinham v. Stockburger*, 249 Va. 376, 381 (1995).

The circumstances in this case do not demonstrate that the parties intended to be bound by the LOI. In fact, the LOI contains several unambiguous phrases demonstrating an intent not to be bound. For example, the letter provides that Stride "*wishe[d] to donate*" the remaining funds over the next five years. A bare "wish," however, is not a clear, decisive term sufficient to impose legal obligation. *See Smith v. Trustees of Baptist Orphanage*, 194 Va. 901, 907-08 (1953); s*ee also Irving v. Divito*, 294 Va. 465, 475 n.4 (2017) (holding that a testator's handwritten note that he "wish[ed] to remove" his son from his will did not constitute a holographic codicil "actually effect[ing] a change" to the will, but it was merely a "'thought or plan' to change his will"). Here, we find that using the word "wishes" was precatory language that simply construed the sentiment or desire of Stride to continue to donate funds to Future. It did not, as Future argues, impose a legal duty.

Notwithstanding the above, Future relies heavily on the LOI's line stating that it "represents the basic terms for an agreement that shall be considered ☐ binding ☐ non-binding." Because neither box was checked, Future asserts that the LOI was ambiguous, and the circuit court should have considered extrinsic evidence to determine whether it was a binding agreement. But even if the sentence, read in isolation, leaves the question unresolved, the document as a whole does not, and in the context of the clear textual indications already discussed, the failure to check either box reinforces the conclusion that the document did not contain any promises or reflect a meeting of the minds. In addition, Future argues that by not construing the LOI as a contract, it renders several words in the LOI superfluous, including "intent" and "agreement." We disagree. Titling a document a "Letter of Intent" generally implies "that the parties intended it to be a

- 8 -

nonbinding expression in contemplation of a future contract." *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). Nor does the use of the word "agreement" in any way indicate the necessary mutual assent to a binding obligation since the document itself stated that the parties could indicate whether their "agreement" was binding or nonbinding. Thus, we reject Future's argument that use of the word "intent" in "letter of intent" establishes Stride's legal obligation to fulfill the LOI's terms.

Accordingly, we hold that the circuit court did not err in ruling that the LOI was not an enforceable contract.

II. The choice of law provision in the LOI is unenforceable.

Future argues that the circuit court erred by dismissing its promissory estoppel claim. Although Future concedes that our Commonwealth does not recognize claims for promissory estoppel, it nevertheless insists that the circuit court should have applied Delaware law (which does recognize promissory estoppel) because of the LOI's choice of law provision. Future contends that by refusing to do so, the circuit court disregarded the Commonwealth's well-established policy of enforcing and applying choice of law provisions by not allowing it to pursue a promissory estoppel action against Stride under Delaware law.

Virginia has embraced, and continues to recognize, choice of law provisions in contracts. *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 342 (1990) (holding that "contractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced"). However, a valid choice of law provision flows from an enforceable contract, and as discussed above, the LOI is unenforceable. *See Settlement Funding, LLC*, 274 Va. at 80 ("*If a contract* specifies that the substantive law of another jurisdiction governs its interpretation or application, the parties' choice of substantive law should be applied." (emphasis added)). While our Commonwealth does enforce and respect

choice of law clauses, we cannot apply a choice of law provision within an unenforceable agreement. Thus, because both parties correctly acknowledge that Virginia law does not recognize a claim for promissory estoppel, our analysis ends.

Therefore, the circuit court did not err in applying Virginia law and dismissing Future's promissory estoppel claim.

CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*